

Richard A. Zimmerman, Esq.
Attorney for Plaintiff
233 Broadway – Suite 2202
New York, NY 10279
Richard A. Zimmerman (RZ 0963)
(212) 962-1818
Patrick C. Crilley (PC 9057)
*Of Counsel*
(212) 619-1919

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

OCEAN TOWING CORP.,

                Plaintiff,

   -against-

FRY'S ELECTRONICS INC.,

                Defendant.
-----------------------------------------------------------X

**ECF CASE**

09 Civ 7461 (LTS)

**VERIFIED COMPLAINT**

    Plaintiff, OCEAN TOWING CORP., (hereinafter "Plaintiff"), by its attorneys, Richard A. Zimmerman, Esq., and Patrick C. Crilley, Esq., of counsel, complaining of the Defendant, FRY'S ELECTRONICS INC., (hereinafter "Defendant"), alleges upon information and belief as follows:

    1. This is a case of admiralty and maritime jurisdiction under 28 U.S.C. §1333, as hereafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of maritime contracts of charter party. Jurisdiction is further proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction further exists under the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2. At all material times, Plaintiff was, and still is, a domestic corporation duly organized, existing and operating under the laws of a State within the United States of America, with offices in the State of Florida.

3. At all material times, Defendant was, and still is, a domestic corporation or other business entity existing under the laws of a State within the United States of America, with business offices located at 600 E. Brokaw Road, San Jose, California 95112.

4. At all material times Defendant was the charterer under a Charter Party contract for the charter of certain ocean going vessels, including various ocean going tugboats and barges, owned, disponently owned and/or operated by Plaintiff. The Charter Party was maritime contracts for the carriage of goods at sea and disputes arising in connection with such maritime contracts are valid admiralty claims.

5. On or about February 21, 2007, Plaintiff, acting as Owner, entered into a maritime contract of charter party with Defendant, as Charterer, which provided, *inter* alia, for the transportation by sea, by tugboat and barge, of a total quantity of 337,000 short tons of bulk aggregates and/or harmless bulk cargoes, to be loaded at Port Canaveral, Florida, in barge quantities of approximately 9,000 short tons per voyage, for discharge at one safe berth Bock Cay, Bahamas (the "Charter Party"). It was anticipated by both parties that it would take approximately 40 consecutive 10 day voyages to complete the transportation of the full quantity of cargo.

6. Under the terms of the Charter Party, Defendant guaranteed, *inter alia,* a minimum depth of water of 18 feet salt water at Bock Cay, and further warranted that the berth and port at Bock Cay would be safe for the performing vessels.

7. From the very start of performance of the contract in March 2007, Defendant breached the Charter Party by failing to provide the guaranteed minimum depth of water of 18 feet salt water at Bock Cay, making the berth and port unsafe for the performing vessels.

8. Defendant's breach of the contract, in failing to provide the guaranteed depth of water at the sole intended discharge port, caused constant delays to the discharge of the shipments, grounding damage to the working barge and an ongoing dangerous condition to the tugboat, barge and the barge's stern ramp employed during the discharge at Bock Cay, and likewise to all personnel using the stern ramp, including the local stevedores and the crew of the vessels.

9. Despite Plaintiff's continuous demands that Defendant cure the breach, by increasing the depth of water at Bock Cay through dredging, Defendant failed to cure the breach did not provide the Charter Party minimum 18 feet depth of water at Bock Cay. The berth and port at Bock Cay was thus an unsafe berth and port.

10. Due to Defendant's breach of contract the performing barge suffered grounding damage at Bock Cay. The barge's stern ramp also suffered damage as it had to be overextended because the barge could not get close enough to the discharge pier.

11. After suffering numerous delays, grounding damage to the barge's bottom and stress damage to the barge's ramp during the first 17 voyages, Plaintiff, in early November 2007, suspended its further performance until Defendant would cure its breach of the contract and the water depth condition at Bock Cay was rectified.

12. The Defendant did nothing to cure the water depth breach of contract and, shortly thereafter, at the end of November 2007, the Charter Party was terminated.

13. As a result of Defendant's breach of the contract and the resulting termination of the contract, Plaintiff has suffered losses as follows: i) lost profit for the carriage of the remaining

cargo under the Charter Party in the amount $1,879,582.10; ii) detention damages for the period November 9th, 2007 until November 30, 2007, while the tug and barge stood by, in the amount $330,000.00; iii) indemnity for all damages to the performing barge "WINBUILD 303" estimated as $212,000; iv) outstanding demurrage owed from the performed voyages prior to cancellation in the amount $34,965.31; and v) reimbursement of certain costs for depth surveying in the amount $4,500.00 incurred by Plaintiff in its attempt to mitigate damages and bring the parties to a position where the contract could continue. Plaintiff claims a total sum of damages in the amount $2,461,047.40.

14. At this time, Plaintiff's claim embodies Plaintiff's best estimate of its damages. Plaintiff reserves its right to amend the complaint as and when additional damages are established and/or known.

15. Defendant, despite just demand from Plaintiff, has refused or otherwise failed to pay, or provide security for, the claimed damages rightly due to Plaintiff.

16. Plaintiff has fulfilled all of its obligations under the Charter Party.

17. Under the terms of the Charter Party, the parties have agreed that disputes between the parties are to be resolved by Arbitration before the Society of Maritime Arbitrators (the "S.M.A.") under U.S. law.

18. Plaintiff expressly reserves all rights under the Charter Party, including, but not limited to, the right to arbitrate disputes, and nothing herein constitutes a waiver of any of the Plaintiff's rights under the Charter Party.

19. The Arbitration between the parties has already commenced and Plaintiff reserves its right to pursue all of the remedies to which it is entitled in that arbitration.

20. Under the S.M.A. Rules, the arbitration Panel in its Award, shall assess arbitration expenses and fees as provided in Section 15 (cost of a stenographic record), Section 36 (expenses of the arbitration including required travel and out-of-pocket expenses of the Panel members, the expense of producing witnesses requested by the Panel, or the cost of providing any proofs produced at the direct request of the Panel) and Section 37 (Arbitrators' fees) and shall address the issue of attorneys' fees and costs incurred by the parties. The Panel is empowered to award reasonable attorneys' fees and expenses or costs incurred by a party or parties in the prosecution or defense of the case (S.M.A. Rules - Section 30).

21. As best can now be determined, Plaintiff estimates that such costs, Panel and witness expenses, and arbitration fees related to the arbitration will be approximately $150,000.00.

22. As best can now be determined, Plaintiff estimates that legal fees and expenses related to the arbitration will be approximately $100,000.00.

23. Interest is routinely awarded to the prevailing party in arbitration proceedings guided by the Society of Maritime Arbitrators. As best can now be determined, Plaintiff estimates that such interest to be awarded at the end of the arbitration proceedings, and up to the date of collection, which Plaintiff estimates could take approximately fifteen (15) months from today, or a total of thirty-six (36) months from November 2007, will be not less than $553,735.00 calculated as simple interest at the rate of seven and one-half percent (7.5%) for a period of 36 months.

24. As a result of Defendants aforesaid breach, Plaintiff now estimates that it has been damaged in the following amounts:

a) Total Damages from Plaintiff's Breach                         $ 2,461,047.40
c) Simple Interest for 36 months at 7.5%                         $    553,735.00
d) Recoverable Costs & Expenses of the Arbitration               $    150,000.00
e) Recoverable Legal Fees & Expenses to be awarded in the

| | |
|---|---|
| Arbitration as permitted under S.M.A. Rules | $ 100,000.00 |
| Total of Plaintiff's damages | **$ 3,264,782.40** |

25. Defendant's main business is the retail sales of electronic goods. Defendant is a specialty retailer of software, consumer electronics, computer hardware and household appliances with a chain of superstores headquartered in Silicon Valley, California. Established in 1985, it has been reported that by 2007 the chain posted sales of $2.35 billion with 34 stores located in several Western states, two in Georgia, eight in Texas, one in Illinois, one in Indiana and two in Arizona.

26. In addition to its main business, Defendant has bought seven islands in the Bahamas, including the island of Bock Cay, and was in the process of developing Bock Cay into a luxury golfing resort.

27. The Defendant, a U.S. based company, certainly conducts business in U.S. Dollars. As a great deal of Defendant's retail sales goods are manufactured overseas and purchased from foreign suppliers, the Defendant is continuously involved in international trade that is routinely conducted in U.S. Dollars. Nearly all U.S. based companies engaged in international trade transact such business in U.S. Dollars and, therefore, regularly have assets in, or passing through, the major U.S. and international banks located in New York City. United States Dollars are the common currency of international trade.

28. Almost every international U.S. Dollar transfer is processed by intermediary banks in the United States, mainly in New York City. The Clearing House Interbank Payment System represents that it processes 95% of these transactions.

29. Upon information and belief, and after investigation, Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Civil Procedure for Certain Admiralty and Maritime Claims.

30. As the Defendant regularly does business in U.S. Dollars, and as almost all of those U.S. Dollar transactions are regularly processed through banks in New York City, Plaintiff fully believes that Defendant has assets within this District comprising of, *inter alia* cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (hereinafter "Assets"), including but not limited to Assets at or moving through banking institutions including but not limited to The Bank of New York, Citibank N.A., HSBC Bank USA, N.A., JPMorgan Chase, Bank Of America, N.A., Standard Chartered Bank, Calyon Corporate and Investment Bank, Deutsche Bank, the Bank of China, Barclays Bank, BNP Paribas, and/or Wachovia Bank, and/or Societe Generale.

31. Based upon the foregoing, therefore, the total sum of Assets sought to be restrained belonging to Defendant in this action is $3,264,782.40.

WHEREFORE, Plaintiff prays:

1. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged.

2. That if the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules of Civil Procedure, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental

Rules of Civil Procedure and the United States Arbitration Act, 9 U.S.C. § 8, attaching all claims, assets, cash, funds, credits, wire transfers, accounts, letters of credit, electronic funds transfers, freights, sub-freights, charter hire, sub-charter hire, or any other tangible and/or intangible assets belonging to, due, claimed by, being held for or on behalf of, or being transferred for the benefit of Defendant, including any such assets as may be in the possession, custody or control of, or being transferred through any garnishee within this District, including, without limitation, assets held by or at The Bank of New York, Citibank N.A., HSBC Bank USA, N.A., JPMorgan Chase, Bank Of America, N.A., Standard Chartered Bank, Calyon Corporate and Investment Bank, Deutsche Bank, the Bank of China, Barclays Bank, BNP Paribas, and/or Wachovia Bank and/or Societe Generale up to and including the amount of $3,264,782.40 to secure the Plaintiff's claims and that all persons claiming any interest in the same be cited to appear and answer the matters alleged.

3. That Plaintiff may have judgment for its claims as aforesaid in the total amount of $3,264,782.40.

4. That in the event the Writ of Attachment issued herein restrains the property of the Defendant found within this district and

    i)    notice has been properly served upon the Defendant in the manner required by Rule B(2) of the F.R.C.P. Supplemental Rules for Admiralty or Maritime Claims and Rule B(2) of the Local Rules of United States District Courts for the Southern and Eastern Districts of New York; and
    ii)   the Defendant fails to appear before this Court; and
    iii)  upon application of plaintiff,

default judgment be granted to Plaintiff in the amount of provable damages limited to the extent of the property subjected to the process of maritime attachment.

5. That in the event Defendant appears in the action following such maritime attachment and garnishment, and upon the application of a party, the Court stay further proceedings pending

the issuance of an arbitration award, and retain jurisdiction for the purpose of entering judgment on the award against the property subjected to the process of maritime attachment.

6. That Plaintiff may have such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
August 25, 2009.

Patrick C. Crilley (PC 9057)
Of Counsel to
Richard A. Zimmerman (RZ 0963)
Attorney for Plaintiff
233 Broadway – Suite 2202
New York, NY 10279
(212) 619-1919

## VERIFICATION

STATE OF NEW YORK         )
                          ) ss.:
COUNTY OF NEWYORK   )

Patrick C. Crilley verifies the following:

1. I am an attorney and the attorney for the Plaintiff herein, and make the following Verification pursuant to the Federal Rules of Civil Procedure, Supplemental Rule B, 28 USC §1746, and the Local Rules of the United States District Court for the Southern District of New York. I have read the foregoing Verified Complaint, know the contents thereof, and believe the same are true to the best of my information and belief which is based upon an examination of documents provided by Plaintiff herein.

2. The reason that this Verification is made by the undersigned rather than by Plaintiff is that Plaintiff is a corporation none of whose officers or directors is within the District.

3. Deponent is authorized to make this Verification on behalf of Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
Executed on August 25, 2009.

Patrick C. Crilley
233 Broadway - Suite 2202
New York, New York 10279
(212) 619-1919
(212) 214-0311 fax